UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| AUDREY S., <br><br> Plaintiff, <br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 5:23-cv-00343-BFM <br><br> **MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Audrey S.[1] applied for Supplemental Security Income payments, alleging disability commencing on August 1, 2015. (Administrative Record ("AR") 10, 227-45.) The alleged onset date was later amended to December 27, 2020. (AR 10, 40.) Plaintiff's application was denied at the initial level of review and on reconsideration, after which she requested a hearing in front of an Administrative Law Judge. (AR 142.) The ALJ held a hearing and heard from Plaintiff and a vocational expert (AR 35-51), after which she issued an

---

[1] In the interest of privacy, this Order uses only the first name and last initial of the non-governmental party in this case.

unfavorable decision. (AR 10-25.)

The ALJ found at step two of the disability analysis[2] that Plaintiff has several severe impairments: idiopathic intracranial hypertension (IIH); migraine headaches; postural orthostatic tachycardia syndrome (POTS); irritable bowel syndrome; asthma; degenerative disc disease of the lumbar spine; obesity; pituitary mass; bipolar disorder; and posttraumatic stress disorder. (AR 13.) At step three, the ALJ concluded that those conditions do not meet or medically equal the severity of any impairment contained in the regulation's Listing of Impairments—impairments that the agency has deemed so severe as to preclude all substantial gainful activity and require a grant of disability benefits. (AR 14); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ then assessed Plaintiff's residual functional capacity—the most that Plaintiff can do despite her limitations. She determined that Plaintiff has the residual functional capacity to perform a range of light work, with limitations: she can occasionally climb stairs and ramps and never climb ladders or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can have occasional exposure to extreme cold, extreme heat, and humidity, and to dusts, odors, fumes, and other pulmonary irritants; can have no exposure to hazards such as unprotected heights and moving mechanical parts; can understand, remember, and carry out simple instructions; can have occasional interaction with supervisors, coworkers, and the public; can make simple, work-related decisions; can only tolerate occasional change in work location; and cannot work at a strict production rate such as the rate required to work on an assembly line. (AR 16-17.) The ALJ credited the vocational expert's testimony that an

---

[2] A five-step evaluation process governs whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520(a)-(g)(1), 416.920(a)-(g)(1). The ALJ, properly, conducted the full five-step analysis, but only the steps relevant to the issue raised in the Complaint are discussed here.

1 individual with those limitations and of Plaintiff's age and education would be able to perform jobs in the national economy. (AR 24.) She thus found Plaintiff to be not disabled and denied her claim. (AR 25.) The Appeals Council denied review of the ALJ's decision. (AR 1-5.)

Dissatisfied with the agency's resolution of her claim, Plaintiff filed a Complaint in this Court. Her sole argument here is that the ALJ provided inadequate reasons for discounting her testimony about her symptoms and limitations. (Pl.'s Br. at 2.) Defendant requests that the ALJ's decision be affirmed.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to deny benefits to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence . . . is 'more than a mere scintilla.' It means—and only means—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citation omitted). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 710 (9th Cir. 1998).

## III. DISCUSSION

Plaintiff argues that the ALJ did not provide specific, clear, and convincing reasons supported by substantial evidence to reject her testimony. (Pl.'s Br. at 2.) For the reasons that follow, the Court finds that the ALJ's decision must be reversed.

### A. Subjective Symptom Testimony

#### 1. Legal framework

Where a claimant testifies about her own medical symptoms, an ALJ must evaluate such testimony in two steps. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could "reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted).

Second, if the claimant meets that first standard and there is no evidence of malingering, the ALJ can reject the claimant's testimony only by offering "specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation marks omitted). An ALJ "is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). At the same time, when an ALJ rejects a claimant's testimony, she must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record," to support that determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).

Judged by that standard, the ALJ gave insufficient reasons for rejecting Plaintiff's testimony about her symptoms and limitations.

**2.  The ALJ's Order**

The ALJ first summarized Plaintiff's testimony (AR 17-18): Plaintiff claimed she is not able to work due to migraines, postural orthostatic tachycardia syndrome, and idiopathic intracranial hypertension. She testified that she can walk but is "wobbly" and tends to fall. She can sit for approximately 1-2 hours before her legs start to hurt. She can lift a gallon of milk. She has daily headaches. On a typical day, Plaintiff does schoolwork, takes it easy, and tries to take naps. She spends about 5-6 hours of the day resting. She has been homeschooled for approximately two years. She helps "a little bit" with household chores and can wash dishes and do laundry. Her hobbies include reading novels, though she listens to them when she has problems with her vision.

After reciting Plaintiff's testimony, the ALJ agreed that Plaintiff's impairments "could reasonably be expected to cause her alleged symptoms." (AR 18.) That is, the ALJ found that Plaintiff satisfied the first step of the subjective-symptom-testimony analysis. The ALJ then concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 18.)

Plaintiff limits her arguments here to her testimony reflecting that she is unable to work due to her impairments of idiopathic intracranial hypertension, migraine headaches, and postural orthostatic tachycardia syndrome. (Pl.'s Br. at 3.) As to those conditions, the ALJ rejected Plaintiff's testimony because she received "conservative" treatment for them. More specifically, the ALJ found: (1) the "evidence of record shows conservative, non-surgical treatment during the relevant time period," and there is no record of "emergency department, urgent care or primary care treatment for injuries due to falls," or "emergency department or hospital treatment for her headaches" (AR 18, 23); (2) Plaintiff's

5

1   impairments have been managed by her outpatient providers, not specialists
2   (AR 22); (3) Plaintiff's headaches are treated with medications and she has
3   "reported improvement in the intensity and frequency of her headaches with
4   medications" (AR 22); (4) it is "notable" that although Plaintiff was diagnosed
5   with POTS and IIH, the record "does not include the workups" establishing
6   those diagnoses, and Plaintiff failed to follow up on referrals for a sleep study or
7   a gait evaluation (AR 22); and (5) Plaintiff testified to use of a cane but the
8   record does not document a prescription for any assistive device (AR 23).
9        Plaintiff contends that none of these reasons provide substantial evidence
10  to discount her testimony. (Pl.'s Br. at 6-7.) The Court agrees and thus remands
11  for reconsideration of her testimony.

13       **3.  Analysis**
14       An ALJ can find a claimant's testimony unpersuasive because she has
15  received only conservative treatment for her conditions. *See Parra v. Astrue*, 481
16  F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative
17  treatment' is sufficient to discount a claimant's testimony regarding severity of
18  an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999)
19  (rejecting subjective pain complaints where the claimant's "claim that she
20  experienced pain approaching the highest level imaginable was inconsistent
21  with the 'minimal, conservative treatment' that she received"). But labeling a
22  course of treatment "conservative" is not a substitute for proper analysis; the
23  ALJ must still explain how a claimant's course of treatment undermines her
24  testimony about her symptoms.
25       As with all reasons given for rejecting a claimant's testimony, this Court
26  must review the ALJ's finding of conservative treatment to see whether it is
27  supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th
28  Cir. 1996). Substantial evidence is a low standard, but it is not entirely

toothless. An ALJ's reasons must be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). Applying that test here, none of the ALJ's reasons withstand scrutiny.

### a. No Emergency Department Treatment or Surgeries

In support of her finding of conservative treatment, the ALJ pointed to the lack of surgical interventions, emergency room treatment, or hospitalizations for Plaintiff's headaches or falls. This reason does not provide support for discounting Plaintiff's testimony.

First, there is no question that Plaintiff suffers from and has been regularly treated by medical professionals for both chronic migraine headaches and falls. (*See, e.g.*, AR 391, 392, 414, 415, 418 (also noting the need for fall precautions), 442, 444, 446, 505, 565.) The fact that she seeks help from her care team instead from an emergency room for her migraines is hardly surprising. Plaintiff suffers up to four migraines per week, and individuals generally do not seek emergency room care for an event that happens more days per week than not. (*See* AR 415.) And her records reflect that common interventions for migraines have provided no relief—or worse, caused intolerable side effects, including dysesthesias, alopecia, and burning in her nose and eyes. (AR 566 (discussing significant side effects from various pain interventions and medications tried over the years).) It is hardly surprising, given this history, that Plaintiff does not look to emergency-room generalists to treat conditions so chronic and complex. As for Plaintiff's falls, Plaintiff never claimed that she had such a severe fall that it would require emergency room treatment—but it would hardly take a fall of that severity to interfere with her ability to work safely, and the ALJ does not explain why it would.

As for surgeries, the ALJ pointed to nothing suggesting that any of Plaintiff's treating doctors recommended surgical treatment for her conditions. Nor does the record reflect that surgery would have been a standard method of

treating Plaintiff's conditions. On the contrary, Plaintiff was referred to a neurosurgeon who apparently found her labs "all normal" and apparently recommended no surgical intervention. (AR 509.) While Defendant argued that it is possible to operate on an abnormal pituitary gland, as the ALJ noted, doctors have ruled out that the pituitary mass is the cause of Plaintiff's headaches. (Def't's Br. at 8 n.4; AR 18.)

To reject a Plaintiff's testimony for her failure to obtain surgical or emergency-room treatment, there should be some basis in the record to believe that such a treatment would have been appropriate. Here there is none.

### b. Lack of Specialists and "Work up" for Diagnoses

The ALJ states that Plaintiff's care was managed by her treating physicians rather than by specialists, and takes that as evidence of conservative treatment. (*See*, *e.g.*, AR 22 (noting that the evidence of record "shows a history of conservative, non-surgical treatment . . . and she has been managed with her outpatient providers during the relevant time period").) This hardly seems a fair critique, let alone—under the circumstances here—a clear and convincing reason to discount Plaintiff's testimony. Plaintiff was regularly seen by a neurologist during the relevant timeframe, and was referred out to and examined by various specialists, including a neuro-ophthalmologist (AR 533), a neurosurgeon (AR 517), a dermatologist (AR 391), and an endocrinologist (AR 509).

The ALJ noted that Plaintiff's POTS was diagnosed by a cardiologist but that there are no records from a cardiologist from either prior to or during the relevant time period, nor is there any record of the "workups" establishing that diagnosis. (AR 18.) That may be true, but there are notes in Plaintiff's file that she was taking one of her medications on instructions of a cardiologist. (AR 571 (metoprolol "for palpitation per cardiologist").) So either Plaintiff was seen by a cardiologist, perhaps before the dates of the records provided to the ALJ, or

someone on Plaintiff's team was consulting with a cardiologist with respect to her care. In any event, the ALJ pointed to no records indicating that Plaintiff's doctors recommended she see a cardiologist throughout the relevant timeframe. The Court notes there is an October 26, 2021, note referring Plaintiff to the cardiology clinic (AR 571), but that is the most recent record in the file, and so the record is unclear whether she followed up on that recommendation or not. The ALJ could have asked Plaintiff that question during the hearing if she believed that fact to be relevant, but did not do so. Nor did the ALJ explain exactly why the lack of a *repeat* visit with the cardiologist during the timeframe covered by the record undermined Plaintiff's testimony. Given the notation that her treating provider was receiving *some* input from cardiology, and the wrinkle in the timing for the recent cardiology referral, the lack of cardiology records is not sufficient evidence upon which to base a decision not to credit Plaintiff's testimony.

The same is true of the ALJ's finding that it is "notable" that the workup for Plaintiff's diagnosis of IIH is not in the record. As with the POTS diagnosis, it is unclear why the "workup" that led to the diagnosis was important. The medical records submitted to the ALJ confirm the diagnosis and reflect that Plaintiff's doctors were treating her based on their belief that she has that condition. Without some explanation for why the absence of a "workup" undermined Plaintiff's testimony, the Court can only speculate as to the grounds for the ALJ's rejection of that testimony.

The ALJ's reasoning is not supported by substantial evidence.

### c. Treatment and Improvement with Medications

The ALJ notes that Plaintiff has been treated with various medications and injections, and that her most recent medication, Aimovig, seems to be improving her condition. (AR 18.) That may be true, but Plaintiff's improved state is not all that good. Plaintiff reported at one point that she was having two

9

1 severe headaches a week with more mild migraines on the other days even with
2 medication. (AR 434.) At another point, she said that with the medication, she
3 was having a migraine up to four days per week. (AR 415.) Plaintiff contends
4 that "two (or four) severe headaches a week would be work preclusive" (Pl.'s
5 Reply Br. at 3), and the vocational expert seemed to agree. (*See* AR 49 (stating
6 there would be no work available to an individual who would be off task 25
7 percent of the workday due to health concerns).)

8 This reason for discounting Plaintiff's testimony is neither convincing nor
9 supported by substantial evidence.

### d. Failure to Follow Up with Gait and Sleep Studies

11 The ALJ noted that Plaintiff was referred for a gait evaluation "but the
12 records do not document that she went or the results of that evaluation." (AR
13 23.)

14 Plaintiff was referred to physical therapy for gait evaluation on October
15 26, 2021. (AR 567, 571.) Just as with the cardiology referral discussed above,
16 this recommendation came in as the last-in-time medical record presented. The
17 ALJ did not question Plaintiff at the hearing as to whether that evaluation was
18 ever authorized or whether she had ever had that evaluation. She thus had no
19 factual basis to conclude that Plaintiff had not had the gait study, let alone that
20 her failure to get it reflected her symptoms are not as severe as she alleges. *See*
21 *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir.2007) (an "*unexplained, or*
22 *inadequately explained*, failure to seek treatment" can result in a rejection of
23 subjective symptom testimony "unless one of a number of good reasons for not
24 doing so applies") (emphasis added).

25 The ALJ also similarly noted that the records "show the possibility that
26 [Plaintiff's] headaches are related to idiopathic intracranial hypertension and
27 sleep apnea although she has not followed through with a sleep study." (AR 18.)
28 With respect to the sleep study, Plaintiff's provider made a referral in November

2019 (when Plaintiff was sixteen years old) and modified it to a referral for a home sleep study on March 24, 2020 (when she was seventeen). (AR 445-46, 453.) As with the gait evaluation, there is no evidence in the record that a sleep study was ever authorized. And again, the ALJ did not question Plaintiff as to whether the sleep study had been authorized or whether she ever underwent that study, and if not, why not.

But even if Plaintiff simply dropped the ball on the gait or sleep study, it would not support the inference that the ALJ drew from those facts. As summarized by the ALJ herself, the record as a whole reflects that Plaintiff has been fairly aggressive in getting the follow-up recommended by her treating physicians. (AR 19-21 (listing recent treatment history).) And there are a lot of follow-up referrals in the record. She was seeing specialist after specialist, receiving test after test, and trying medication after medication. If Plaintiff missed one or two follow-up referrals among the dozens of referrals and treatment visits, this would not be "relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's determination that Plaintiff's symptoms are not as severe as she alleges—not without some further explanation about why the absence of a gait or sleep study undermined some portion of her testimony. The Court concludes that these minor issues do not supply substantial evidence for the ALJ's conclusion.

### e. Use of a Cane

The ALJ determined that although Plaintiff testified to the use of a cane, the record does not reflect a prescription for a cane. (AR 23.) This statement is contradicted by a May 26, 2020, record reflecting that Plaintiff's treating provider made a "[r]eferral for a cane" after Plaintiff reported dizziness, vertigo, and falls. (AR 443.) And a subsequent record dated January 28, 2021, states that Plaintiff "received the cane and it helps a little." (AR 391.) The ALJ's finding on this point is simply factually inaccurate.

**B.     Conclusion**

To be clear, the Court recognizes that conservative treatment can support a finding that a claimant's testimony should not be credited. But here, Plaintiff was receiving lumbar punctures, nerve blocks, injections, and strong medications. She had repeat MRIs and saw numerous specialists. And yet, with all of the medical interventions described in the record, the best Plaintiff could report was having two days a week of severe migraines, with other days of mild migraines. (AR 566.) The failure to find something that works better hardly falls at Plaintiff's feet; the ALJ's recitation of the course of treatment reflects Plaintiff's diligence in seeking answers for her symptoms.

Based on this record, the ALJ's conclusion that Plaintiff's conditions were relieved by—or that she only sought—conservative treatment, is not supported by evidence that " a reasonable mind might accept as adequate." Nor can the Court conclude that the course of Plaintiff's treatment undermines her testimony.

Finally, the Court is also unable to conclude that the ALJ's errors in evaluating Plaintiff's subjective complaints were "harmless" or "inconsequential to the ultimate non-disability determination." *Brown-Hunter*, 806 F.3d at 492. As such, the Court reverses the ALJ's decision.

**IV.     REMAND FOR FURTHER PROCEEDINGS**

Remand is appropriate, as the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1101, n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172,

1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

## V. CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is **REVERSED** and this matter **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: September 25, 2023  _____
HONORABLE BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE